GILBERT TROMBLEY *vs.* STEVENS-DURYEA COMPANY.

Hampden.    September 27, 1910. — October 19, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Agency*, Existence of relation. *Automobile. Negligence*, In driving automobile, In use of highway. *Evidence*, Presumptions and burden of proof.

Discussion, by BRALEY, J., of the relative rights and duties under the common and the statutory law of persons driving horses and of persons driving automobiles upon public ways, and of the nature of evidence necessary to warrant a finding that one driving an automobile in such a manner as to frighten horses driven by another traveller is negligent.

Although, at the trial of an action for injuries received in a collision with an automobile, evidence of the number upon the registration tag, issued by the highway commission in accordance with the provisions of § 2 or of § 4 of St. 1909, c. 534, and displayed upon the automobile in accordance with the provisions of § 5, and that such registration was in the name of the defendant, is sufficient, if not rebutted, to warrant a finding that the automobile was the property of the defendant, it alone is not sufficient to warrant a finding that the person driving the automobile was doing so as the servant or agent of the defendant.

TORT for personal injuries to the plaintiff and damage to his horses, wagon and harness, alleged to have been caused by his horses becoming frightened and running away because of the negligent way in which an automobile, alleged to belong to the defendant, was driven by one who was alleged to have been a servant of the defendant.    Writ dated April 8, 1909.

The case was tried before *Raymond*, J.    The plaintiff testified that at about four o'clock in the afternoon of March 17, 1909, as he was driving on the Wilbraham road, he saw an automobile approaching; that when it was about one hundred feet away he motioned to the driver to stop; that the driver did not stop, but proceeded past him within two feet of his wagon and continued fifteen feet beyond him; that there were twenty feet of good highway on the side of the road beyond the automobile; that the plaintiff's horses were frightened by the automobile and ran away, injuring the plaintiff and damaging his horses, wagon and harness.

·One Greene, who was present at the time of the accident, testified as to the number on the registration tag on the automobile,

and the plaintiff put in evidence the certificate of registration of that number, showing that the automobile was registered in the name of the defendant.

Excepting evidence as to the amount of the damage, there was no further evidence for the plaintiff, and, the defendant having rested at the close of the plaintiff's evidence, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*R. J. Talbot & F. P. Squier,* for the plaintiff.

*C. T. Callahan,* for the defendant.

BRALEY, J.   The defendant makes no contention that the plaintiff was careless, and the only questions for decision are, whether there was evidence for the jury of the negligence of the driver and only occupant of the automobile, and, if he could be found to have been negligent, whether the defendant owned or controlled the car, and the driver was acting at the time as its servant.

It is common knowledge that horses, however well trained, if unaccustomed to them, are made restive and frightened by approaching automobiles, which often are run at high speed, attended by explosive noises, with the emission of acrid and disagreeable odors.   The person driving or in control of the automobile is presumed to know of these mechanical conditions under which it must be operated, and was required by the St. of 1903, c. 473, § 7, in force when the accident happened, to exercise every reasonable precaution when passing teams to avoid frightening the horse, and when signs of fright are observable, the speed must be reduced, " and in case of extreme fright shall reduce the motive power to a full stop."   It is, moreover, immaterial whether the automobile is approaching the team from the rear or coming from the opposite direction.   *Gifford* v. *Jennings,* 190 Mass. 54, 55.   And it often must happen that the driver alone knows of the habits of his horse, or first notices signs of fright. To meet the exigencies of such a situation the statute confers upon him the right to signal the approaching automobile to stop. If it keeps on, " unless such movement be necessary to avoid accident or injury, or until such animal appears to be under the control of its rider or driver," and a collision follows, or from

fright due to its operation the horse becomes unmanageable and acts viciously, damaging the team or causing personal injuries to those in the carriage, the due care of the parties usually presents a question of fact. *Hennessey* v. *Taylor*, 189 Mass. 583. *Dudley* v. *Kingsbury*, 199 Mass. 258. It should be remembered, however, that the rule of the common law, whereby each traveller is bound to use ordinary care to prevent or avoid inflicting injury, has not been abrogated. The statute, while elaborately providing for what shall be done under certain contingencies, does not relieve those in charge or control of the automobile, or the driver of the carriage, from taking such further precautions as the dictates of ordinary prudence may demand. The jury, if they were satisfied that the plaintiff's signal to stop was seen by the person driving the automobile, and that without slackening speed he unnecessarily kept on, passing within two feet of the horses and causing them to become unmanageable and to run away when the width of the roadway was sufficiently ample to have enabled him to go by at a distance of twenty feet, which might have prevented the accident, would have been warranted in finding a violation of the statute from which his negligence could be inferred, and also that the automobile was carelessly operated. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580, 582. *Field* v. *Gowdy*, 199 Mass. 568, 573.

There also was evidence connecting the defendant with the ownership of the car. It could not be operated lawfully upon the highway unless duly registered "by the owner or person in control," and until rebutted, the plaintiff could rely on the presumption that the requirements of the statute had been followed. Sts. 1903, c. 473, §§ 1, 3; 1905, c. 311, § 2; 1906, c. 412, § 8; 1907, c. 580, § 1; 1908, c. 648, § 3. See St. 1909, c. 534, § 2; *Doherty* v. *Ayer*, 197 Mass. 241, 247 ; *Dudley* v. *Northampton Street Railway*, 202 Mass. 443 ; *Feeley* v. *Melrose*, 205 Mass. 329, 331. The certificate of registration in which the defendant's name appeared under a number corresponding with the number of the car, accordingly was competent as tending to prove and establish by the identity of the numbers, either the defendant's ownership or the defendant's absolute right to its exclusive possession and management. *Webber* v. *Davis*, 5 Allen, 393, 396. *United States National Bank* v. *Venner*, 172 Mass.

449.   *Commonwealth* v. *Sherman*, 191 Mass. 439.   *Campbell* v. *Wallace*, 46 Mich. 320.   *Sewell* v. *Evans*, 4 Q. B. 626, 632.

But to recover, the plaintiff also was required to offer some evidence of the defendant's responsibility for the driver's negligence.   The Legislature might have said that whenever a registered automobile was operated on the public ways, the person, firm or corporation named in the certificate should be liable *prima facie* to other travellers for accidents caused by its mismanagement.   The statute, however, goes no further than to provide, that for the purposes of the issuance, transfer, and revocation of certificates, and the enforcement of the penal provisions of the act, automobiles shall be identified by their register number, and their owner or owners ascertained from the certificate. The common law, therefore, controls, and there is no presumption from his mere physical possession, that the person operating the automobile was the servant or agent of the corporation.   He may have hired or borrowed it or wrongfully appropriated it to his own use, and in neither event would the defendant be chargeable with his misconduct.   *Shepard* v. *Jacobs*, 204 Mass. 110. The exceptions are bare of any statement descriptive of the defendant's business, or explanatory of the relations, if any, which existed between them.   It may have been the plaintiff's misfortune that such evidence could not be obtained, but this failure of proof justified the ruling that the action could not be maintained.   *Norris* v. *Anthony*, 193 Mass. 225, 228.   *Sibley* v. *Nason*, 196 Mass. 125.

*Exceptions overruled.*